ORIGINAL

Towaki Komatsu
802 Fairmount Pl. Apt. 4B
Bronx, NY 10460
Tel: 718-450-6951
E-mail: Towaki_Komatsu@yahoo.com

August 30, 2019

Hon. Roanne L Mann
United States Magistrate District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>Headley v. City of New York,</u>
               No. 19-cv-4543 (ENV)(RLM) (E.D.N.Y.)

Dear Magistrate Judge Mann,

My name is Towaki Komatsu. I'm filing this letter pursuant to FRCP Rule 24 that concerns intervention both as of right and by permission in order to be granted the ability to intervene in this action as an interested party against Defendant City of New York and its New York City Human Resources Administration ("HRA"). Under Rule 24(a)(2), a district court must grant an applicant's motion to intervene if "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by other parties." Rule 24(b)(1) addresses permissive intervention and states, "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24. "When considering a request for permissive intervention, a district court must 'consider whether the intervention will unduly delay or



prejudice the adjudication of the rights of the original parties."

The case in which I seek to intervene concerns the following property and transactions in which I claim an interest:

1. Property that is an office operated by Defendant City of New York's HRA to provide members of the public information, resources, and government benefits while meeting with members of the public to process applications for government benefits.

2. Property that Defendant City of New York and HRA operate that the following excerpts from *Sanchez v. Turner*, 2002 W.L. 1343754, 2002 U.S. Dist. L.E.X.I.S. 10911 (2002) confirm are public forums:

   - "Plaintiffs seek an injunction preventing the Commissioner of the New York City Human Resources Administration ("HRA," "the Agency," or "the City") from denying plaintiffs access to City offices in which welfare claimants apply for public assistance benefits."

   - "The Second Circuit has held that while welfare offices are not traditional public fora similar to public streets, they are public fora for the purposes of speech pertaining to welfare issues."

In regards to this point, HRA Commissioner Steven Banks and other HRA personnel that include Vincent Pullo (HRA's Chief Contracting Officer) and Paul Romain (HRA's Deputy Agency Chief Contracting Officer) continue to illegally prevent me from attending public forums that HRA conducts in its offices located at 150 Greenwich Street in Manhattan to inspect draft copies of proposed contracts that HRA makes available to other members of the general public prior to conducting public hearings during which those proposed contracts are on the agenda to be discussed by members of the public. HRA has done this to me for 7 such public hearings to date and did so most recently in regard to a public hearing that was conducted on 8/15/19. The following is a link to a video recording that I legally recorded with a cell phone of New York City Councilman Stephen Levin on 8/13/19 while we were

both in the Committee Room located inside of New York City Hall at the conclusion of a public hearing that he conducted for the New York City Council's Committee on General Welfare as its chairman:

https://drive.google.com/open?id=1yvP6VjvWa6Xkk2-vy1jfmIg2htXAaT_U

That video recording confirms that I apprised him of the fact yet again that HRA's personnel were illegally preventing me from visiting HRA's offices located at 150 Greenwich Street to inspect proposed contracts between it and various vendors prior to a public hearing that was conducted on 8/15/19. That video recording also confirms that I sought his assistance with compelling HRA's personnel to end that illegal practice. However, I have no reason to believe that he intervened on my behalf in violation of his Fourteenth Amendment legal to do so in his capacity as a lawmaker. While illegally depriving me of access to public forums that HRA conducts in its offices located at 150 Greenwich Street in Manhattan, Mr. Banks and other HRA personnel have used a fraudulent narrative to try to justify their patently illegal actions in this regard that violate my First Amendment rights, my Fourteenth Amendment rights, and New York State's Open Meetings Law as well as other applicable laws. While doing so, they have subjected me to an illegal abuse of process that has been designed to achieve the collateral objective of depriving me of my First Amendment and Fourteenth Amendment rights that apply to the public forums that HRA has conducted in its offices located in 150 Greenwich Street. In this respect, that abuse of process is comparable to the abuse of process that Ms. Headley suffered when she visited an HRA office and accosted there by security personnel largely because HRA's management has recklessly diverted financial resources away from having a sufficient amount of suitable seating available in its offices for members of the public who try to obtain government benefits to which they're

legally entitled to leasing exorbitant office space for HRA's personnel that is located at 150 Greenwich Street in Manhattan that is commonly referred to a 4 World Trade Center and at other locations.

On a related note, the following is a link to the video recording that is available on the Internet for a public hearing that was a public forum that New York City Mayor Bill de Blasio conducted on 3/18/19 inside of the Blue Room located inside of New York City Hall that his staff arranged to be recorded on video and shared on the Internet:

https://www.youtube.com/watch?v=rqwyR7ZD23M

The following is a link to the public notice that is available on the Internet that was issued by the Mayor's office in an official New York City government report known as the "City Record"

https://a856-cityrecord.nyc.gov/RequestDetail/20190307108

Within the video recording of the public hearing that I just discussed that was conducted on 3/18/19, a member of the Mayor's NYPD security detail criminally harassed, assaulted, and ejected me from that public hearing as I lawfully conducted myself during it. That occurred as I was in the middle of testifying to the Mayor as he illegally violated my First Amendment and Fourteenth Amendment rights by interfering with my ability to testify primarily for the benefit of the public at his expense. As he illegally interfered with my constitutional rights in that way, he expressed a fraudulent narrative designed to illegally subject me to an abuse of process to block my entirely lawful testimony and subject me to illegal viewpoint discrimination. My testimony during that hearing that confirms everything that I just stated about that public hearing begins at the elapsed time of 16 minutes and 58 seconds from the

beginning of that video. As I was illegally assaulted, harassed, and ejected from that hearing by a member of the Mayor's NYPD security detail, it occurred in the Mayor's immediate presence and he illegally failed to intervene on my behalf to stop that and allow me to lawfully finish my testimony. These circumstances directly relate to the fact that Ms. Headley experienced comparable treatment when she was accosted and assaulted by security personnel in an HRA office.

3. Transactions that occurred in property operated by Defendant City of New York's HRA in which Ms. Headley and her son's First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment rights were violated as a result of them having been seized in that property by personnel who work for the City of New York and may otherwise be third-party agents of the City of New York while the circumstances that existed at the time they were seized confirm that Ms. Headley and her son were lawfully exercising their First Amendment right to peaceably assemble and engage in expressive association in furtherance of having Ms. Headley obtain government benefits for her son as a responsible, devoted, and diligent parent.

4. Transactions that occurred between Ms. Headley, members of the NYPD, and other security personnel that caused criminal charges to be filed against Ms. Headley that were later dismissed.

5. Transactions Ms. Headley experienced in an office operated by HRA that are similar to negative experiences that I and other members of the public have experienced **a)** in offices that HRA operates and **b)** at other public forums that were conducted by personnel who work for the City of New York before she experienced the set of events that gave rise to this action due to fraud, negligence, and other abuse by its personnel.

6. Transactions reflecting abuse, fraud, negligence, and a pretext by government personnel in an office operated by HRA that New York City and New York State government officials have condoned and ignored after I have repeatedly **a)** testified to them in detail about such problems in HRA offices, **b)** otherwise testified in their presence, **c)** otherwise met with them partly to apprise them of 3 sets of related litigation that I continue to have against HRA and the City of New York that were commenced in May of 2016, January of 2017, and April of 2018 with the New York State Office of Temporary and Disability Assistance ("OTDA") serving as an administrative appellate forum for claims that I asserted against HRA, New York State Supreme Court in Manhattan (index number: 100054/2017), and United States District Court for the Southern District of New York (case number: 18-cv-3698). Earlier this week, I was informed that attempts are being made by the New York State Supreme Court to schedule a date for oral arguments to be presented in the lawsuit that I have against HRA that is filed with that court. On 8/27/19, United States District Judge Lorna Schofield issued an order that corresponds to docket number 214 in my federal lawsuit that I just identified. In that order, she authorized me to file a third amended complaint in that action. I intend to do so shortly by adding HRA Commissioner Steven Banks, other HRA personnel, and others as defendants in that action.

7. Transactions Ms. Headley experienced in an office operated by HRA that were widely reported by various news organizations in stark contrast to whistleblower news censorship that I have experienced and still experience by many of those same organizations and so-called journalists in regards to comparable transactions that I have had that relate to HRA and public forums that it and other New York City government agencies and personnel have conducted.

8. Transactions Ms. Headley experienced in an office operated by HRA about which she testified on 2/4/19 during a public hearing for which the following facts are entirely true:

   a. That hearing was conducted by the New York City Council's Committee on General Welfare.

   b. I also testified in that hearing that was conducted in New York City Hall.

   c. That hearing was subject to my First Amendment rights, my Fourteenth Amendment rights, and New York State's Open Meetings Law.

   d. That hearing was recorded on video due to arrangements that the New York City Council made and was uploaded to the Internet at the following address:

   https://councilnyc.viebit.com/player.php?hash=46UZCNDWuRk4

   e. Members of the New York City Council that include Stephen Levin illegally allowed Ms. Headley to testify in that public hearing that was a public forum for an amount of time that was significantly longer than me and others who testified in that hearing in flagrant violation of our First Amendment and Fourteenth Amendment due process and equal protection rights. During that hearing, Ms. Headley's testimony spanned nearly 17 minutes between the elapsed times of roughly **a)** 21 minutes and 30 seconds from the beginning of the video recording that was recorded of that hearing to **b)** 38 minutes and 23 seconds. By comparison, my testimony during that hearing lasted less than 6 minutes and occurred between the elapsed times of roughly **a)** 4 hours, 27 minutes, and 56 seconds from the beginning of that recording to **b)** 4 hours, 33 minutes, and 44 seconds.

   f. Members of the New York City Council also flagrantly violated my First Amendment and Fourteenth Amendment rights that pertain to due process, equal protection, and

expressive association that is discussed in *Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) during that hearing by not remaining in it to observe my testimony to the same extent and with the same level of attention that they paid to Ms. Headley's testimony in it. In fact, as I testified during that hearing, I deliberately called New York City Councilwoman Vanessa Gibson out for not paying attention to my testimony as she instead played with her cell phone during it.

g. Although I signed-up to testify in the public hearing that was conducted on 2/4/19 in New York City Hall in which Ms. Headley testified before she signed up to testify in it, one or more members of the New York City Council illegally violated my Fourteenth Amendment due process and equal protection right to testify in that hearing in the order in which members of the public signed-up to testify in it. As a result and in stark contrast to Ms. Headley's testimony in that public hearing, one or more members of the New York City Council scheduled my time to testify in that hearing in a manner that caused it to occur toward the end of that hearing after that hearing was relocated to an adjacent room that is far smaller than the room in which Ms. Headley testified in that same public hearing. Due to how my testimony was scheduled during that public hearing, most of the public who attended that hearing had left that hearing before my testimony began. That fact establishes that my First Amendment right to testify in a manner that would allow it to be heard was unlawfully and deliberately kept from the general public's eyes and ears during that public hearing in stark contrast to the experience that Ms. Headley experienced during that public hearing.

In closing, I wish to add that due to applicable privacy reasons and laws pertaining to confidentiality that include 18 NYCRR §357, there are documents that I seek to file under seal in this action in conjunction with my application to intervene in it.

In the event that this Court needs clarification about anything that I have discussed in this letter, I respectfully request a conference with this Court for that purpose.

Thank you for your time and consideration.

Regards,

Towaki Komatsu